No. 13,358.

RIVERSIDE RESERVOIR AND LAND COMPANY *v.* HINDERLIDER,
STATE ENGINEER ET AL.

(48 P. [2d] 171)

Decided April 1, 1935.

Messrs. LEE, SHAW & McCREERY, Mr. STOTON ·R.
STEPHENSON, for plaintiff in error.

Messrs. SMITH, BROCK, AKOLT & CAMPBELL, Mr. PAUL P.
PROSSER, Attorney General, Mr. NORRIS C. BAKKE, Deputy,
for defendants in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THIS case involves, as the only matter in controversy,
the interpretation of a decree awarding certain priorities
to the plaintiff in error's Riverside reservoir. The ques-
tion arises upon a ruling of the state engineer, based upon

his understanding of the decree. The Farmers Reservoir and Irrigation Company brought about the ruling by a formal protest to that officer, alleging that the Riverside reservoir had already received the quantity of water to which it was entitled under its senior priorities and demanding that the Farmers company be permitted to take water under its duly adjudicated junior priorities.

The Riverside company's contention is that the decree awarded it senior priorities not only for certain quantities of water specified therein (which are admitted to have been diverted from the South Platte river through the inlet of its reservoir), but also in addition an unspecified, undetermined and naturally indeterminate quantity of water sufficient to make up for such seepage as might occur while its reservoir is filling and for the evaporation going on from the surface of the reservoir after the water has been taken from the stream. The state engineer's ruling was against the right to such additional water, and the district court after due hearing approved the ruling and refused to enjoin him from enforcing it.

To test the validity of the above contention, we resort first to the language of the decree itself. The language is as follows (the italics being ours): "It is hereby adjudged and decreed that there be allowed to flow into said reservoir *from said river,* for the use aforesaid, for the benefit of the parties lawfully entitled thereto, under and by virtue of appropriation by original construction and use and *reservoir priority No. 24* in Weld, Morgan and Washington counties, to date April 1, 1902, 700,000,000 cubic feet of water annually, *to be diverted through its inlet* at the rate of 500 cubic feet per second; and further by first enlargement and *reservoir priority No. 45* in said three counties, to date from August 1, 1907, 1,805,000,000 cubic feet of water *to be diverted through its inlet* at the rate of 740 cubic feet per second * * *." These words seem to us entirely clear. They call for diversion of specified quantities of water from the river. The amount so to be diverted can be measured by recognized methods.

On the other hand, the actual amount of diversion would of course appreciably exceed the expressly stated amount if there should be added, in compliance with the demand of the Riverside company, an amount equivalent to the losses suffered by way of seepage and evaporation. We cannot read such an unexpressed provision into a decree which seems both clear and complete. There is neither patent nor latent ambiguity in the wording. Even if it should be proper in some circumstances—for the purpose of ascertaining the exact meaning of a judgment—to consider the findings made by a referee before judgment is entered, as we are urged to do in this case, there is no justification or excuse for doing so under the record before us. No error being perceived in the proceedings below, the judgment will be affirmed.

Judgment affirmed.